State to use v. Fargo.

---

THE STATE to use of RUSSELL, Appellant, v. FARGO et al.

**Division Two, July 3, 1899.**

1. **Motion to Strike Out:** EXCEPTION: MOTION FOR NEW TRIAL. Before the appellate court will consider an exception that the trial court erred in not sustaining plaintiff's motion to strike out a part of the answer, it must appear that its attention was called to the matter in the motion for a new trial.

2. **Attachment Bond:** LOTTERY TICKETS: MAINTAINABLE. Defendant sued a lottery company in attachment for a reward of $15,000 on the ground that the company had printed on its lottery tickets that it would pay that sum to any person who would present a prize ticket which had not been promptly paid, and that he held such a ticket. He sued for the reward, and gave the usual statutory bond in attachment, conditioned that he would prosecute the suit without delay and with effect and would pay all damages and costs that might accrue to any defendant, garnishee, etc., in the suit. His suit was dismissed upon demurrer, on the ground that the reward was tainted with the illegality of a lottery transaction. Afterwards this suit was brought by defendant in that, upon the attachment bond, asking for attorney's fees, costs, etc. *Held,* that the bond being properly executed and its breach clearly established, the defendant can not escape its obligations by going behind the bond and showing that it grew out of an illegal transaction.

3. ————: ATTORNEY'S FEES AND COSTS AFTER DISSOLUTION. Where the defendant in an attachment suit gave bond to pay whatever judgment might be adjudged against him, which amounts to a substitution of the bond for the goods attached, and the attachment is dissolved, and the case proceeds to trial and results in a judgment for the defendant, the defendant, in a subsequent suit on the bond, can not recover for attorney's fees, costs and expenses incurred in the defense of the suit upon its merits *after the dissolution of the attachment.* (Overruling State to use v. O'Neill, 4 Mo. App. 221; State ex rel. v. Coombs, 67 Mo. App. 199.)

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

L. A. LAUGHLIN for appellant.

(1)   The court erred in its holding that the fact that E. Fox & Co. were conducting a lottery constituted a defense to this action.   Hayden v. Sample, 10 Mo. 223; Bennett v. Bank, 61 Mo. App. 297; State to use v. Hesselmeyer, 34 Mo. 76; State ex rel. v. Stark, 75 Mo. 566; State ex rel. v. Goodhue, 74 Mo. App. 162.   (2)   The court erred in its holding that plaintiff could not recover attorney's fees and other costs and expenses incurred by his assignors after the dissolution of the attachment by their giving bond and up to the final determination of the case as well as before the dissolution. State to use v. Thomas, 19 Mo. 613; State to use v. Beldsmeier, 56 Mo. 226; State ex rel. v. Shobe, 23 Mo. App. 474; State ex rel. v. Goodhue, 74 Mo. App. 166; State to use v. O'Neill, 4 Mo. App. 221; State ex rel. v. Coombs, 67 Mo. App. 199.

DOBSON & McCUNE for respondents.

(1)   Appellant's cause of action having originated in an illegal transaction, viz., the sale of a lottery ticket, there can be no recovery in this case.   Columbia Bank Co. v. Haldeman, 7 W. & S. (Pa.) 233; White v. Bass, 3 Cush. (Mass.) 448; Clark on Contracts, sec. 213; Sprague v. Rooney, 104 Mo. 359; Holman v. Johnson, 1 Cowp. 341; Dieckhoff v. E. Fox & Co., 57 N. W. Rep. 930; Bishop on Contracts, sec. 476. (2)   Under the present statute no damages can be recovered on the attachment bond except those incurred in securing a dissolution of the attachment.   State to use v. Larabie, 25 Mo. App. 208; State to use v. McHale, 16 Mo. App. 478; Fry v. Estes, 52 Mo. App. 1.

BURGESS, J.—This is an action upon an attachment bond.

The petition alleges execution of the bond by defendant, its conditions, that breach was committed therein by failure of defendants to prosecute the suit without delay and with effect,

the damage sustained by Fox, Lloyd and O'Ferrall by reason of the wrongful suing out of the attachment, and the assignment of the bond by them to plaintiff. The damages alleged are for attorney's fees four thousand one hundred and fifty dollars, obtaining sureties on the bond to dissolve the attachment the sum of one thousand dollars, and for travelling and sundry expenses the sum of one hundred and thirty-one and thirty-nine-hundredths dollars. No damages are claimed for injury to the business of defendants in that suit.

The defendants answered as follows: They admit that on or about the 20th day of April, 1893, the defendant, F. F. Fargo, as plaintiff, commenced an action by attachment in the circuit court of Jackson county, Missouri, at Independence, against E. Fox, H. C. Lloyd and O. G. O'Ferrall, doing business as E. Fox & Co., and defendants state that the said Fox. Lloyd and O'Ferrall were engaged in an unlawful and illegal business, under the name of E. Fox & Co., to wit, the business of carrying on and conducting a lottery. "That prior to the commencement of the said·action at Independence the said E. Fox & Co. had at various times and places published and offered publicly in writing, by printing upon their tickets and price lists, an offer of reward, in words and figures as follows, to wit: 'Fifteen Thousand Dollars Reward—We hereby offer a reward of $15,000 through the Metropolitan National Bank of Kansas City, Mo., to anyone who can produce a prize ticket bearing our signature which has not been promptly cashed, upon presentment to us. E. Fox & Co.'

"That the said action brought at Independence, Mo., was to recover the reward so offered by the said E. Fox & Co., said Fargo alleging in his second amended petition that the said E. Fox & Co. had sold to one J. Bieckhoff a ticket, numbered 62, 791, in the lottery of the said E. Fox & Co., which ticket had drawn a prize of fifteen thousand dollars; that the said plaintiff had produced and presented to the said E. Fox & Co., the said ticket numbered 62,791, and had demanded payment

of the prize drawn thereby, which payment had been refused by the said E. Fox & Co., and plaintiff Fargo in that case demanded judgment for said reward. A copy of said second amended petition is herein attached, marked 'Exhibit A.'

"And defendants further state that in the said action brought against the said E. Fox & Co. the said defendants in that action demurred to the petition of said Fargo; that after hearing arguments of counsel upon the said demurrer, the court sustained the demurrer upon the ground that the offer of a reward was tainted by the illegality of the business in which the said E. Fox & Co. were engaged, and that inasmuch as the prize drawn by the tickets could not be collected, neither could they be forced to pay a reward offered, based upon their failure to pay their prizes; and thereupon judgment was rendered in favor of the said E. Fox & Co. against the said Fargo.

"Defendants further state that thereupon the said Fargo perfected an appeal from the decision of the said circuit court to the Supreme Court of Missouri, but failed to prosecute said appeal, and upon motion of the said E. Fox & Co. the said judgment was affirmed in the Supreme Court.

"Defendants further state that the only business in which the said E. Fox & Co. were engaged which was injured or damaged by reason of said original suit was the said illegal and unlawful business of carrying on a lottery.

"Defendants further state that whatever sums of money were expended by the said Fox, Lloyd and O'Ferrall, in the defense of the said original suit, in the matter of employing attorneys or furnishing bond, or traveling expenses, was expended in the defense of an obligation growing out of an illegal and unlawful transaction and in an effort to avoid the payment of a prize won in their lottery, or of a reward offered by them for anyone who would detect them in failing to pay such a prize.

"Defendants further state that this action is not brought in the name of the real parties in interest.

"Defendants further state that the said plaintiff, Lamon D. H. Russell, has paid no consideration for the assignment to him of the cause of action upon the attachment bond in said original suit.

"Defendants deny each and every allegation contained in the said petition, not above expressly admitted."

Plaintiff filed motion to strike out all of defendants' answer except the following paragraph: "Defendants deny each and every allegation contained in the said petition not above expressly admitted."

The motion was overruled and plaintiff excepted.

The case was tried by the court, a jury being waived.

There was judgment for defendants from which, after an unsuccessful motion by plaintiff for a new trial, he appeals.

In 1893, F. F. Fargo, one of the defendants, brought an attachment suit in the circuit court of Jackson county against E. Fox, H. C. Lloyd and O. G. O'Ferrall, who were engaged in the lottery business in Kansas City, Kansas, under the firm name of E. Fox & Co.

The petition was in two counts; the first count being to recover upon a lottery ticket sold by E. Fox & Company which was alleged to have drawn a prize of $15,000; the second count being to recover a reward offered by said company, which was printed on the backs of their lottery tickets, and which they refused to pay.

At the time of the institution of the suit an attachment bond in accordance with the statute was given by Fargo, with the United States Trust Company as surety. Under the writ of attachment, various banks and express companies were summoned as garnishees.

On the first day of July, 1893, after E. Fox, H. C. Lloyd and O. G. O'Ferrall, had appeared and pleaded to the action of F. F. Fargo, they executed their bond, with L. D. H. Russell and L. A. Berger as sureties, in the sum of $35,000 to pay plaintiff the amount he might recover, whereupon the

attachment was dissolved. Plaintiff Fargo then dismissed his suit as to the first count in his petition. A demurrer was then sustained to the second count, and Fargo refusing to plead further final judgment was entered in favor of Fox, Lloyd and O'Ferrall.

Upon the trial of the case in hand the assignment of the bond in question to plaintiff by Fox, Lloyd and O'Ferrall and the value of the services for which damages are claimed were proven. It was then shown that Fox and his co-partners were, at the time of offering the reward of $15,000 by them to any one who could produce a prize ticket bearing their signature which had not been promptly cashed on presentation to them, engaged in the lottery business in the State of Kansas.

Over the objection of plaintiff the court declared the law to be as follows: "The court declares the law to be that under the evidence in this case the plaintiff can not recover." And refused the following declaration of law asked by plaintiff of which he complains:

"3. The court declares the law to be that the fact that E. R. Fox & Co., assignors of plaintiff, were engaged in the lottery business at the time the attachment was issued, constitutes no defense to this action."

It is insisted by plaintiff that the action of the court in denying the motion to strike out all that part of the answer setting up the fact that E. R. Fox and Company were engaged in the lottery business, was error, but this matter was not called to the attention of the court in the motion for a new trial, and can not be raised in this court for the first time. It is not enough that exception was taken to the action of the court at the time the motion was overruled. [State v. Nelson, 101 Mo. 477; Roberts v. Boulton, 56 Mo. App. 405.] Before a trial court can be convicted of error in passing upon any question which may arise during the trial of a cause, it must have its attention called thereto by motion for a new trial, and thus be given an opportunity to correct its own error.

Another contention is that the court erred in holding that the fact that E. Fox & Co. were conducting a lottery constituted a defense to this action.    Upon the other hand defendants claim that plaintiff's cause of action having originated in an illegal transaction, viz., the sale of a lottery ticket, there can be no recovery in this case.

The conditions of the bond are, that the plaintiff shall prosecute his action without delay and with effect; refund all sums of money that may be adjudged to be refunded to the defendant, or found to have been received by the plaintiff and not justly due to him, and pay all damages and costs that may accrue to any defendant, garnishee or interpleader by reason of the attachment, or any process or proceeding in the suit, or by reason of any judgment or process thereon, and pay all damages and costs that may accrue to any sheriff or other officer by reason of acting under the writ of attachment, following the instructions of the plaintiff.    [Sec. 527, R. S. 1889.]

The bond was properly executed, and breach of its conditions clearly established by reason of the failure of the plaintiff in the suit in which the bond was given to prosecute it successfully, but defendant undertakes to escape from the consequences of its breach, by going behind the judgment in that case and showing that the offer of the reward upon which the attachment suit was based was illegal and void, claiming that if the cause of action sued upon in that case was illegal that as the attachment bond grew out of the same transaction it is also void for like reason.

But the bond was not we think in any way affected by the merits or demerits of that litigation.    It was simply conditioned for the prosecution of the suit without delay and with effect, and, whether or not the suit was predicated upon a legal cause of action did not enter into its consideration or affect its validity.    Its execution was a privilege conferred by statute upon the plaintiff in that suit, that he might exercise if he chose to do so, and having had the full benefit of it he should not now

complain that it is void upon the ground that it was executed in a suit predicated upon an offer of a reward, for the failure to pay a lottery ticket which was void, upon the ground that its issue was against the law. [State to use v. Hesselmeyer, 34 Mo. 76.]

Hayden v. Sample, 10 Mo. loc. cit. 223, was an action upon an attachment bond in which the defendant sought to prove the truth of the affidavit upon which the attachment was issued. The court said: "Had the defendants the right to inquire into the truth of the issue made upon the plea in abatement, by a retrial of that issue in this case? If so, then the defendants would have a right to go behind the judgment of the court, and show that the court had committed an error either in law or in fact, and that the plaintiffs in the former suit should have recovered a judgment, and therefore they were not liable on their bond, for a failure on the part of their principal to prosecute his suit with effect. It would be a novel mode of setting aside, vacating and annulling a judgment. But the truth of the affidavit made to obtain the attachment was not in issue here, and should not be put in issue —the only inquiry in reference thereto, and material in this case, was the fact that an issue had been made, tried and found against the plaintiffs, and that damages had by reason thereof accrued to the defendant."

So in State ex rel. v. Stark, 75 Mo. 566, it was held that the obligors in an attachment bond given in a suit brought under the Texas cattle act to recover damages allowed by that act, could not plead the invalidity of the act in avoidance of his liability on the bond.

It seems by parity of reasoning that if in an action upon an attachment bond the defense will not be permitted to inquire into the truth of the issue made upon the plea in abatement by a retrial of that issue in the cause, or in an action against the obligors on a similar bond given in a suit brought under the Texas cattle act to recover damages allowed by that

act they could not plead the invalidity of the act in avoidance of their liability on the bond, that the fact that the attachment suit in the case at bar was predicated upon a cause of action which was illegal is no defense to this action. The authorities relied upon by defendant as supporting its contention upon this branch of the case are not in point, we think, for the reason that the attachment bond was not in any way affected by the illegality of the cause of action in which it was executed.

It is next insisted that the court erred in holding that plaintiff could not recover attorney's fees and other costs and expenses incurred by his assignors after the dissolution of the attachment by their giving bond, and up to the final determination of the case as well as before the dissolution. The effect of the execution of the bond was to dissolve the attachment, and to vacate all proceedings touching the property and effects attached, and the garnishees summoned. [Sec. 569, R. S. 1889.]

State to use v. O'Neill, 4 Mo. App. 221, was an action upon an attachment bond. The defendant in the attachment suit had given a bond for the release of the attachment, the effect of which was to dissolve it. Upon the trial on the merits judgment was rendered against defendant, who appealed to the Supreme Court, where the judgment was reversed and the cause remanded. Thereupon the suit was dismissed. In the suit upon the bond it was held that damages might be recovered for losses and expenses incurred in defending the attachment, as well before as after its dissolution.

So in State ex rel. v. Coombs, 67 Mo. App. 199, it was held in an attachment suit where the defendant gives the bond required by the statute to release the attached property and thereby dissolves the attachment, and wins his case on the merits, he is entitled to recover on the attachment bond the attorney's fees paid in the defense on the merits. The court said: "But it is contended that, because the transfer company came into court and gave its bond, with approved security, to

satisfy any judgment that the attaching plaintiff might re-
cover, and thereby secured a dissolution of the attachment, it
lost its right to recover the expenses thereafter incurred in de-
feating the main case. This exact question was presented to
the St. Louis Court of Appeals in State to use v. O'Neill, 4
Mo. App. 221, and it was there held that in an action on an
attachment bond, where the property had been released on de-
fendant's bond given during the pendency of the action, dam-
ages may be recovered for losses and expenses incurred in
defending the attachment suit, after, as well as before, the
dissolution of the attachment. . . . After a careful con-
sideration of the decision just quoted from we feel constrained
to adopt its views. It has not been overruled or criticised by
any subsequent case. While that section of the statute law
authorizing the defendant in attachment to enter into a bond
to the plaintiff, and thereby secure a discharge of the attach-
ment, is said to dissolve the attachment, the giving of such
bond does not in reality remove altogether the attachment pro-
ceedings. It only amounts to a substitution of the bond for
the property attached. If the suit is not thereafter success-
fully defended on its merits, the defendant and his sureties
will be held to answer on the bond. A defeat, then, of the
action on the merits is necessary to avoid liability on the bond
given by the defendant. The defendant was bound to do this
to protect himself and his sureties. The attachment is, to a
certain extent, still in existence, until a successful defense of
the main case is reached. . . . In our opinion, the circuit
court correctly held the defendants liable for attorney's fees
paid by the transfer company in defending the action on the
merits, and the judgment will therefore be affirmed."

But we are unable to concur in the views expressed in
these adjudications and for these reasons: The effect of the
execution of the bond to dissolve the attachment, was as we
have said, to at once vacate the attachment and all proceedings

thereunder. There was then no occasion thereafter for the services of an attorney or the incurring of any further or additional expense in defending the attachment, for it no longer existed. The case is in this respect unlike the cases of State to use v. Thomas, 19 Mo. 613; State to use v. Beldsmeier, 56 Mo. 226; State ex rel. v. Shobe, 23 Mo. App. 474, and State v. Goodhue, 74 Mo. App. 162, in which the attachments were not dissolved until the final determination of the suits, ·while in the case at bar the attachment was dissolved upon the execution of the bond for that purpose. The distinction is obvious, and is pointed out by Judge ROMBAUER in State to use v. McHale, 16 Mo. App. 478, in which it is held that attorney's fees and other expenses incident to a suit, which are recoverable as damages in a suit on the attachment bond, are confined to such as are incurred in obtaining a dissolution of the attachment; that the same rule in this respect obtains as in suits for damages on injunction bonds. Citing, Boatmantel v. Stewart, 55 Cal. 15; Hovey v. Rubber Tip Co., 12 Pr. N. S. 360, 372.

The question was again before the St. Louis Court of Appeals in State to use v. Larabie, 25 Mo. App. 208, in which the same distinction is drawn between a suit upon an attachment bond where the attachment is not dissolved until final judgment in favor of the defendant on the merits, and one where a contest of the ground of the action upon the merits is necessary to procure a dissolution of the attachment. In this class of cases it is held that the damages which arise in a subsequent action upon the attachment bond embraces not only the direct damages which plaintiff may have sustained from the suing out of the attachment, but also such costs and expenses as the defendant in the attachment suit incurred in defending the suit upon its merits, but where the attachment ·is dismissed or dissolved on a trial of a plea in abatement, the only damages recov-

erable are such as are connected with the attachment, or with some proceeding connected therewith.

Fry v. Estes, 52 Mo. App. 1, was an action upon an attachment bond, and an instruction which authorized the jury to allow the plaintiff such damages as they might believe his intestate had sustained by reason of the attachment suit, including all traveling expenses, together with a reasonable attorney's fee as they might believe should be allowed from the evidence in the case, was condemned upon the ground in part that the attorney's fees were not limited by the instruction to such fees as were necessarily incurred in obtaining a dissolution of the attachment, but such as the jury might believe should be allowed in the case from the evidence.

"The statute was not designed to give damages beyond the natural and proximate damages resulting from the running of the attachment" (State to use v. Thomas, *supra*), and should not be so construed as to include costs or expenses incurred in and about the defense of the suit upon its merits after the dissolution of the attachment.

Where the attachment is dissolved and the property released, upon the execution of a bond by the defendant for that purpose, it would be a harsh rule indeed that would hold the plaintiff in the suit liable upon his attachment bond, at the instance of the defendant in the suit, for costs, expenses and attorney's fees incurred by defendant in the defense of the suit upon its merits, regardless of the amount thereof and the length of time which it might continue, and in which the attachment is in no way involved.

As State to use v. O'Neill, 4 Mo. App. 221, and State ex rel. v. Coombs, 67 Mo. App. 199, are not in accord with the views herein expressed, they are overruled.

For these considerations we reverse the judgment and remand the cause. GANTT, P. J., concurs. SHERWOOD, J., not sitting.